# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

Anthony Herndon,                                  Case No. 3:15CV561

    Plaintiff

    v.                                            **ORDER**

Carlos V. Torres, et al.,

    Defendants

This personal-injury case arises out of a truck driver's vicious attack on another truck driver at a rest stop.

One evening in June, 2014, Plaintiff Anthony Herndon was driving his semi-trailer truck through Perrysburg, Ohio. As Herndon, preparing to turn into a truck stop, pulled his rig into a left-turn lane, the defendant, Carlos Torres, suddenly merged his truck into the turn lane and cut-off Herndon.

After both men parked their trucks near each other, Herndon walked by Torres and urged him to be more careful. Cursing at Herndon, Torres retrieved a long metal bar known as a "cheater bar" and beat Herndon with it repeatedly, breaking Herndon's leg and inflicting permanent injuries.

Herndon filed this suit against Torres and defendant Avrora Express, Inc., the trucking company for whom Torres worked at the time of the attack. He brings claims of negligence, wanton/reckless misconduct, assault, battery, and negligent and intentional infliction of emotional

distress against Torres. Herndon also alleges that Avrora is vicariously liable for Torres's attack on him, and that the company was negligent in hiring, retaining, training, and supervising Torres.

Jurisdiction is proper under 28 U.S.C. § 1332(a)(1). (Doc. 1 at ¶¶1–3).

Pending is Avrora's motion for summary judgment. (Doc. 28). For the following reasons, I grant the motion.

## Background

Avrora is a Massachusetts corporation in the business of transporting and delivering automobiles from the east coast of the United States to the west coast. It operates a fleet of eight trucks and engages as many as ten "independent contractors" to make the coast-to-coast trips. (Doc. 29 at 3).

Ilya Khotsin and Dmitriy Salagornik are the owners of Avrora.

Avrora evolved out a now-defunct transportation company called Vitaliy's Auto Sales, Inc., that Salagornik had owned with his father. When Vitaliy's closed, Salagornik sold or leased the company's trucks to Avrora.

### A. Avrora and Torres's Relationship

In 2012, Torres applied to work for Vitaliy's.

Torres held a Class A driver's license that allowed him to operate tractor trailers. (*Id.*). Torres had also held several jobs that required him to undergo either a criminal background check, a drug test, or both. He testified that no prospective employer had ever denied him a job based on the results of a criminal background check or drug test.

When he applied to Vitaliy's, Torres submitted to a drug test and represented that he did not have a felony conviction. Vitaliy's then used a third-party human-resources company to inquire into

2

Torres' motor-vehicle record and enroll him in a random drug-screening program. This process "showed no disqualifying information and Salagornik engaged Torres to drive for Vitaliy's." (Doc. 29 at 4).

When Vitaliy's closed, Avrora, at Salagornik's urging, hired Torres. Rather than conducting a new employment screen and background check, Avrora simply utilized the materials that Vitaliy's had generated while vetting Torres's application.

### B. Nature of Torres's Work

Between late 2012 and June, 2014, Torres "intermittent[ly]" hauled loads for Avrora. (Doc. 24–4 at 46). As Khotsin described it, Torres was:

> free to go on to the trip or not to go to the trip . . . There was no commitment. There was nothing like he 8:00 a.m. he has to show up and do some work, check in or check out, nothing like that.
>
> We call him. We have a load, we have a truck. We say, you want to go to this trip on this particular date? He says, yes or no.

(*Id.*).

When he accepted a job, Torres drove a truck that Avrora owned, though he used his own cell phone to communicate with Avrora and customers, chose his own clothes, and kept his own logbook. Even while occasionally hauling for Avrora, Torres remained free to take jobs at other companies.

If Torres accepted a job, Avrora had no ability to control the number of hours he worked. It was, instead, federal law that set the maximum number of hours Torres could drive in a given week. (Doc. 29 at 8). Khotsin also testified that, in 2013 – the one full year in which Torres hauled for

3

Avrora – Torres worked only half the hours that a full-time trucker would have worked. (Doc. 26–4 at 46–47).

Oftentimes during his trips, Avrora would contact Torres and ask him to make an additional pick-up. However, Torres had discretion to accept or decline the additional work as he saw fit. And in hauling cars to the west coast, Torres had discretion to select his own routes: while Avrora might suggest routes for him to take, the final decision always rested with Torres.

For each period that Torres hauled for Avrora, the company paid him in bi-weekly installments. If Torres damaged the truck or its cargo, Avrora could deduct the damage from his pay. Avrora also covered the costs of fuel, tolls, and traffic citations (if any) that Torres incurred during coast-to-coast hauls.

It is undisputed that Avrora annually provided Torres with a 1099 supplemental income form, an IRS form that independent contractors, rather than employees, use.

During Torres's tenure with Avrora, neither Khotsin nor the company "receive[d] any reports related to any threatening or violent behavior exhibited by Torres during his engagement with Avrora" or "outside of his engagement with Avrora." (Doc. 27–6 at ¶¶8, 9).

### C. The Attack

In June, 2014, Avrora engaged Torres to haul a shipment of vehicles from Massachusetts to California. (Doc. 29 at 5).

It was during this trip that Torres encountered Herndon and, as described above, beat him with the cheater bar. The attack left Herndon with a fractured femur and a great deal of chronic pain. Operations to repair the fracture resulted in one of Herndon's legs being longer than the other.

Authorities arrested Torres, and he later pled guilty to attempted felonious assault and served a year in prison.

## Standard of Review

Summary judgment is appropriate under Fed. R. Civ. P. 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant must initially show the absence of a genuine issue of material fact. *Id.* at 323. Once the movant meets that burden, the "burden shifts to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. *Celotex*, *supra*, 477 U.S. at 324.

I accept the non-movant's evidence as true and construe all evidence in its favor. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992).

## Discussion

Avrora seeks summary judgment on three grounds.

Regarding Herndon's vicarious-liability claim, Avrora contends that, as a matter of Ohio law, it cannot be liable for Torres's intentional torts because Torres was an independent contractor, not an employee. In the alternative, Avrora argues that even if Torres were its employee, it is still not liable because Torres was not acting in the scope of his employment when he attacked Herndon.

As to Herndon's negligence claims, Avrora maintains that the undisputed facts show that it was neither Torres's employer nor negligent in hiring, training, retaining or supervising Torres.

5

## A. Choice of Law

At the outset, the parties dispute whether Ohio or Massachusetts law applies.[1]

"In deciding conflict of law questions in diversity of citizenship cases, a federal court generally follows the choice of law rules of the state in which it sits." *In re Commercial Money Ctr., Inc., Equip. Litig.*, 603 F. Supp. 2d 1095, 1099 (N.D. Ohio).

"Under Ohio law, a presumption is created that the law of the place of the injury controls." *Friedman v. Intervet Inc.*, 2010 WL 2817257, *8 (N.D. Ohio). This presumption controls "unless another jurisdiction has a more significant relationship to the lawsuit." *Id.*

In deciding that question, Ohio courts consider: "(1) the place of the injury; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; (4) the place where the relationship between the parties, if any, is located; and (5) any factors under Section 6 [of the Restatement of the Law 2d, Conflict of Laws] which the court may deem relevant to the litigation." *Morgan v. Biro Mfg. Co.*, 15 Ohio St. 3d 339, 342 (1989).

Section 6, in turn, allows a court to consider: "(a) the needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and

---

[1] Based on the parties' briefs, it appears that the general contours of Ohio and Massachusetts law are more or less the same when it comes to identifying: 1) whether one is an independent contractor or an employee; and 2) the elements of a negligent hiring/retention/training/supervision claim. The law in the two states differs, however, when it comes to an employer's liability for an employee's intentional torts. Under Ohio law, an employer can almost never be liable for the intentional torts of its employee. But under Massachusetts law, the employer may be liable if "the employee's assault was in response to the plaintiff's conduct which was presently interfering with the employee's ability to perform his duties successfully." *Miller v. Federated Dep't Stores, Inc.*, 304 N.E.2d 573, 580 (Mass. 1973). Because Herndon argues Avrora is liable under that provision of Massachusetts law, it is appropriate to resolve the choice-of-law issue.

the relative interests of those states in the determination of the particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability and uniformity of result; and (g) ease in the determination and application of law to be applied." 1 Restatement of the Law 2d, Conflict of Laws § 6(2)(a)–(g).

### 1. Place of Injury

It is undisputed that the place of the injury is Ohio. I therefore start with the presumption that Ohio law controls this dispute. *Friedman*, *supra*, 2010 WL 2817257, at *8; *see also Walker v. Nationwide Mut. Ins. Co.*, 2015-Ohio-5371, ¶24 (Ohio App.).

### 2. Conduct Causing the Injury

Likewise, the conduct causing Herndon's injuries – to wit, Torres's beating Herndon with the cheater bar – occurred in Ohio.

Herndon suggests that the relevant "conduct" was Avrora's decision to hire or engage Torres. (Doc. 32 at 16) ("Mr. Herndon's injury was merely the ultimate manifestation and/or result of Defendant Avrora's negligent conduct."). But Herndon cites no case law to support that understanding, and the cases Avrora cites refute it. *Laux v. Huillerat*, 680 F. Supp. 1131, 1136 (S.D. Ohio 1987); *Grieser v. Montgomery*, 2012 WL 1906379, *2 (N.D. Ohio).

Accordingly, Ohio – as "the state in which both the conduct and the injury occur[red]" – has "the dominant interest in regulating that conduct, determining whether it was tortious in character, and determining whether the interest is entitled to legal protection." *Kurent v. Farmers Ins. of Columbus*, 62 Ohio St. 3d 242, 246 (1991). "[S]ubject only to rare exceptions, the local law of the state where the conduct and injury occurred will be applied[.]" 1 Restatement of the Law 2d, Conflict of Laws § 145.

### 3. Domiciles, State of Incorporation, and Prior Relationships

At the time of the attack, Herndon was an Alabama citizen, Torres was a Massachusetts citizen, and Avrora was a Massachusetts citizen. (Doc. 1 at ¶¶1–3).

In this kind of case, where the parties do not have their domiciles in the state where the injury and the conduct causing the injury occurred, "[t]he third factor points in no single direction." *Grieser*, *supra*, 2012 WL 1906379, at *2. And where, as here, the parties do not have any prior relationship or past dealings with one another, "it will be rare that § 145's domicile factor, alone, will overcome the presumption that the law of the place of injury controls." *Grubb v. Day to Day Logistics, Inc.*, 2015 WL 4068742, *9 (S.D. Ohio).

### 4. Locus of the Parties' Relationship

It is undisputed that Ohio is the only place where the paths of all three parties crossed.

### 5. Section 6 Factors

Herndon does not argue that any of the Section 6 factors supports applying Massachusetts rather than Ohio law, nor do I find any of them particularly relevant.

\* \* \*

Because the injury and the conduct that caused it occurred in Ohio, and because Ohio is the only state where all parties' paths crossed, I conclude that Ohio law controls this dispute.[2]

---

[2] In so holding, I reject Herndon's argument that *Laux*, *supra*, 680 F. Supp. 1131, warrants a different result. Most importantly, the court in *Laux* did not mention, let alone apply, the presumption that Ohio law controls when the injury and conduct causing the injury occurs in Ohio.

## B. Respondeat Superior Claim

## 1. Independent Contractor

Under Ohio law, a hiring party is not vicariously liable for the torts of an independent contractor. *Laderer v. St. Rita's Med. Ctr.*, 122 Ohio App. 3d 587, 594 (1997).

"The chief test in determining whether one is an employee or an independent contractor is the right to control the manner or means of performing the work." *Ponyicky v. City of Brunswick*, 2014-Ohio-3540, ¶11 (Ohio App.).

"The determination of who has the right to control must be made by examining the individual facts of each case. The factors to be considered include, but are certainly not limited to, such indicia as who controls the details and quality of the work; who controls the hours worked; who selects the materials, tools and personnel used; who selects the routes traveled; the length of employment; the type of business; the method of payment; and any pertinent agreements or contracts." *Id.*

"If such right is in the employer, the relationship is that of employer and employee; but if the manner or means of performing the work is left to one responsible to the employer for the result alone, an independent contractor relationship is created." *Id.*

Given the undisputed evidence, a jury could only find that Torres was an independent contractor.

First, it is undisputed that Torres alone controlled which jobs he took and the hours he worked. As Salagornik testified, whenever Avrora sought out Torres to make a particular haul, Torres had discretion to accept or reject the offer. This discretion spilled over into mid-trip decision-making: if Avrora contacted Torres during a trip and asked him to pick-up another load, Torres could refuse to do so.

9

When Torres was hauling, moreover, Avrora did not set his hours; rather, federal regulations fixed that number. And if Torres needed additional time to complete a haul, he was free to tell Avrora. In addition, Torres's hours in 2013 were roughly half that a full-time trucker would likely work.

Second, Torres selected the routes he took. *Bookwalter v. Prescott*, 168 Ohio App. 3d 262, 269 (2006) (fact that trucker "was not required to take any particular route" while hauling cargo was evidence of his independent-contractor status).

Third, Torres worked on a haul-by-haul basis, and Avrora correspondingly paid him by the job. *Harmon v. Schnurmacher*, 84 Ohio App. 3d 207, 213 (1992) (recognizing that an independent contractor "is generally hired to complete a single job only and does not have a continuing, full-time relationship with a single client"); *Freeman v. Ideal Merch., Inc.*, 2008-Ohio-1721, ¶18 (Ohio App.) (fact that "the men were paid by the job and not the time" supported the trial court's finding of an independent-contractor relationship).

Fourth, the parties' use of a 1099 form "suggests that the parties were not acting in an employer/employee relationship but rather in that of an independent contractor relationship." *Northeast Ohio Coll. of Massotherapy v. Burek*, 144 Ohio App. 3d 196, 203–04 (2001).

In contrast, Herndon emphasizes that Avrora owned the truck Torres used to haul cargo, and that it identified where Torres was to make pick-ups and deliveries. (Doc. 32 at 17–18). Herndon also notes that Avrora expected Torres to be the "face of the company," and that it sought to control his behavior by prohibiting him from drinking alcohol while on a trip.

But these facts do nothing to show that Avrora controlled the manner and the means of Torres's work.

Although Avrora owned a piece of equipment that Torres needed to accomplish the work, once Torres accepted a job and set out on a haul, he, rather than Avrora, had essentially unfettered control over how he used that equipment (what routes he took, what hours he worked, whether he accepted or declined additional cargo pick-ups along the way) to accomplish the haul.

Likewise, in making Torres and its other drivers the face of the company, Avrora was simply identifying an objective for Torres to accomplish, and it was up to Torres to figure out how to interact properly with customers. *Ponyicky*, *supra*, 2014-Ohio-3540, at ¶11 ("if the manner or means of performing the work is left to one responsible to the employer for the result alone, an independent contractor relationship is created").

And while the fact that Avrora forbade Torres to drink alcohol while on a haul does suggest that Avrora exercised some control over the manner in which Torres performed the work, such evidence is not a sufficient basis for a jury to find that Torres was an employee of Avrora.

Because the undisputed facts would permit a jury to find only that Torres was an independent contractor, Avrora is not liable for Torres's attack on Herndon. Accordingly, Avrora is entitled to summary judgment Herndon's vicarious-liability claim.

### 2. Scope of Employment

Even assuming, *arguendo*, that Torres was Avrora's employee, Avrora still would not be liable under a respondeat-superior theory of liability.

Under Ohio law, "[a]n employer can be held liable for an employee's intentional, malicious acts only where those acts are performed in the scope of the employee's employment." *Leach v. Heyman*, 233 F. Supp. 2d 906, 912 (N.D. Ohio 2002). "As a general rule, however, an intentional and wilful attack committed by an agent or employee, to vent his own spleen or malevolence against

the injured person, is a clear departure from his employment and his principal or employer is not responsible therefore." *Id.*

Here, no reasonable jury could find that Torres was acting within the scope of his employment at the time of the attack. On the contrary, and as a matter of law, Torres "clear[ly] depart[ed]" from any employment relationship he might have had with Avrora when he began beating Herndon. *Id.* For this reason as well, Avrora is entitled to summary judgment on the vicarious-liability claim.

## C. Negligence Claims

To prevail on his claims for negligent hiring, retention, training, and supervision, Herndon must establish: 1) the existence of an employment relationship; 2) the employee's incompetence; 3) the employer's actual or constructive knowledge of that incompetence; 4) the employee's act or omission that caused the plaintiff's injuries; and 5) the employer's negligence in hiring, retaining, training, or supervising the employee proximately caused the plaintiff's injuries. *Sygula v. Regency Hosp. of Cleveland East*, 64 N.E.3d 458, 471 (Ohio App. 2016).[3]

Because an employment relationship is an element of Herndon's negligence claims, my determination, *supra*, that a reasonable jury could find only that Torres was an independent contractor is enough to grant summary judgment to Avrora on the negligence claims.

But even assuming that Avrora were Torres's employer, Herndon has not shown a genuine factual dispute on at least two elements of his negligence claims.

---

[3] Herndon has brought four separate negligence claims – for hiring, retaining, training, and supervising Torres – but each claim has essentially the same elements, the only difference being the whether it was Avrora's negligent hiring, negligent retention, negligent training, or negligent supervision that proximately caused Herndon's injuries. I therefore discuss the claims together.

## 1. Knowledge

It is undisputed that Avrora did not have actual knowledge of Torres's alleged violent or criminal propensities.

Khotsin so testified (Doc. 27 at ¶¶8–10), and Torres, when he applied for a position with Avrora's predecessor-in-interest, represented that he had no felony convictions and had never lost a job due to a failed background check. Torres did not display any violent or criminal propensity during the roughly two years he hauled for Avrora (Doc. 27 at ¶¶6–10), and both Khotsin and Salagornik testified that Torres was a reliable driver.

Furthermore, there is no evidence to support a jury finding that Avrora had constructive knowledge of Torres's alleged criminal or violent propensities.

Constructive knowledge is "[k]nowledge that one using reasonable care or diligence should have, and therefore that is attributed by law to a given person." *Hartings v. Xu*, 2014-Ohio-1794, ¶74 (Ohio App.).

Herndon argues at length that, had Avrora simply conducted a criminal background check on Torres, it would have discovered that: 1) Torres allegedly had four prior convictions, including one for domestic violence; and 2) police in Holyoke, Massachusetts had arrested Torres twice in 1988 and once in 2000. (Doc. 32 at 10–11, 22–24).

This argument fails for two reasons.

First, neither federal regulations nor Ohio law required Avrora to run a criminal background check on Torres. *See* 49 C.F.R. § 391.23 (specifying the "investigations and inquiries with respect to each driver it employs" that motor carries must undertake, none of which concerns drivers' criminal backgrounds); *Rozzi v. Star Personnel Servs., Inc.*, 2007-Ohio-2555, ¶11 (Ohio App.)

(collecting cases supporting the proposition that "Ohio law holds that no such duty [to run a criminal background check on prospective employees] exists"); *see also Connes v. Molalla Transport Sys., Inc.*, 831 P.2d 1316, 1323 (Colo. 1992) (employer had no duty to investigate driver's non-vehicular criminal background "in order to protect a member of the public . . . from a sexual assault committed by [the driver] in the course of making a long-haul trip over the interstate highway system").

Accordingly, the law does not impute to Avrora knowledge of any information that the company would have discovered had it undertaken the background check.

Second, it is undisputed that the District Court in Holyoke, Massachusetts, and the Hampden County, Massachusetts, Superior Court have no record of Torres incurring a criminal conviction in or after 1988, when he turned eighteen. (Doc. 27–3) (signed and sealed certification from the Deputy Clerk of the Holyoke District Court); (Doc. 27–4) (signed and sealed certification from the Deputy Clerk of the Hampden County Superior Court).[4]

Herndon nevertheless maintains that Torres does, in fact, have multiple criminal convictions.

He bases this argument on the "expert declaration" of Jill Miller, an Ohio private investigator. According to Miller, she ran a standard pre-employment background check on Torres and concluded that "prior to 2014, Defendant Torres had been convicted of the crimes of drug possession (2008 and 2009), trespass (2008), domestic violence (2008), and had been subject to a protective order (2007)." (Doc. 23–1 at ¶10a).

---

[4] Herndon tries to discount these certifications by observing that, in 2012 – when Avrora engaged Torres – the age of majority in Massachusetts was seventeen. (Doc. 32 at 22 n.5). Because not even Herndon suggests that Torres had a criminal conviction in 1987, whether the certifications at issue went back an additional year is immaterial.

But Miller does not point to any court records or certified copies of conviction to support that opinion. Nor does she explain how the "criminal records" she attached to her declaration establish that Torres has four criminal convictions.

In the absence of such a foundation and explanation, Miller's "expert declaration" simply embodies her opinion as to the sum and substance of Torres's criminal record, which is insufficient to show a genuine dispute of material fact re. Avrora's constructive knowledge of Torres's criminal or violent propensities.

In any event, I have examined the records on which Miller relied, and they do not support her opinion. For example, the background check that Miller ran turned up the "criminal record" associated with Torres's assault on Herndon. Notably, that record specifies a "conviction date" of September 29, 2014. (Doc. 23–1 at 11). But the "criminal records" associated with Torres's alleged convictions for drug possession, trespass, and domestic violence contain no reference to a "conviction date"; they simply indicate an "offense date." (Doc. 23–1 at 9–12).

For that reason as well, Miller's unexplained and unsubstantiated opinion does not show that Avrora had constructive knowledge of Torres's alleged criminal or violent propensities.

### 2. Avrora's Negligence

#### a. Foreseeability

Given that Avrora neither knew nor should have known about Torres's alleged criminal or violent propensity, I also hold that Avrora did not have a duty to protect Herndon from Torres.

As I have previously explained:

> [A] plaintiff must prove that the employee's acts were "reasonably foreseeable" by the employer. An act is reasonably foreseeable only if the employer knew or should have known of the employee's propensity to engage in similar criminal, tortious, or

15

dangerous conduct. To thus be liable for an employee's incompetence, the employer must be able to anticipate the employee's misconduct and thereafter unreasonably take the risk to either hire him or continue his employment.

*Johnson v. J.B. Hunt Transp., Inc.*, 2009 WL 4282941, *6 (N.D. Ohio).

At bottom, Herndon's argument is that Avrora ought to have foreseen the attack because the company ought to have conducted a criminal background check. But that argument is contrary to Ohio law, which did not require Avrora to do so. I therefore conclude there is no factual basis for a jury to find that Torres's attack was foreseeable to Avrora.

### b. Causation

"When a third person's criminal act intervenes between a defendant's conduct and a plaintiff's injuries, the defendant's negligence is the proximate cause of the plaintiff's injuries only where the defendant could have reasonably foreseen the intervening act." *Evans v. Thrasher*, 2013-Ohio-4776, ¶22 (Ohio App.).

For the reasons already given, there is no evidence suggesting that Avrora should have foreseen Torres's attack on Herndon. Accordingly, there is likewise no basis on which a jury could find that any negligence on Avrora's part in hiring, retaining, supervising, or training Torres proximately caused Herndon's injuries.

### D. Punitive Damages

Finally, because Avrora is entitled to judgment as a matter of law on all of Herndon's causes of action against it, Herndon's request for punitive damages from Aurora also fails.

**Conclusion**

It is, therefore,

ORDERED THAT defendant Avrora Express's motion for summary judgment (Doc. 28) be, and the same hereby is, granted.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge